The Opinion and Decision in this case, were written by the Chief Justice—not for publication, but merely for the use of the Court below, which has possession of the original record, and is familiar with all the facts and circumstances of the case. But a petition for a rehearing, having been presented after the decision in this Court was rendered, an act of Assembly makes it the duty of the Reporter to publish the petition and the opinion—although the case, depending entirely upon the facts, settles no question of law whatever. To render the opinion thus prepared, intelligible to the reader who is unacquainted with the controversy, some preliminary explanation will be necessary: the following brief and imperfect outline of the case may be sufficient for that purpose.
Robert Ormsby & Co. Merchants, and Graham and Ferguson, Carpenters, entered into a copartnership to trade in plank and other lumber, in Louisville. The business was to be carried on upon the capital and credit of Ormsby & Co. at least until a capital sufficient for the business, should arise from the profits of the trade; and a piece of ground, comprising a square of the city, belonging to Ormsby & Co. was to be used as the lumber yard; and they were to have two thirds of the profits. Graham and Ferguson, who furnished no part of the capital, were to *554 be the acting traders and managers of the concern, and to have one third of the profits.
The partnership commenced in May, 1823. Its duration is one of the points in dispute in this controversy—one party (Ferguson) alleging that it terminated in the Fall of 1826, or Spring of 1827: while the other (Hite) contends that it lasted till July, 1830, or until the death of Ormsby, which occurred at a still later period.
In September, 1830, J. & W. Graham, and Matthew Ferguson, one of the firm of Graham and Ferguson, and R. Ormsby and Thomas Hite, who composed the firm of Ormsby & Co. made a contract in writing, by which the former agreed to build three houses for Ormsby & Hite; to receive ‘the balance of the plank and lumber account’ in part payment, and the rents for the residue. The buildings were completed according to the contract, and the cost of them, due to the contractors, was $8318,
Upon that contract, Ferguson, who, by some agreement with his partners, had succeeded to the rights of all—brought an action at law, against Hite as surviving, partner (Ormsby having departed this life,) claiming a large sum due for erecting the houses, over and above “the balance of the plank and lumber account.”
To stay the proceedings in that suit, Hite filed the original bill in this case—alleging that the accounts of the plank and lumber partnership remained unsettled: and that there was a large balance remaining due to him, as surviving partner, and praying that the amount due Ferguson & Co. on the building contract, might be set off against an equal amount of the sum due on the lumber partnership accounts, and for a decree for the balance.
The defendants Graham & Ferguson, in their answers, denied that the partnership had continued longer than till the spring of 1827; denied that there was any thing due to Ormsby & Co. or to Hite as surviving partner, more than had been already allowed on the building contract; and they contend, and plead, and exhibit a writing as proof of the fact—that all the partnership accounts, relating to the lumber business, were finally settled and closed in July, 1830—the balance being far short of the amount *555 of the three buildings. They also contend that, in consequence of some mistake in the settlement, a credit was allowed on the building contract for a larger sum than the true balance of the plank and lumber account—which they seek to have corrected.
May, 5.
The partnership was dissolved in 1826 or 1827.
The Louisville Chancellor perpetuated the injunction, and rendered a decree in favor of Hite, against Ferguson, for $11,907 28. From which Ferguson appealed to this Court; and Hite, claiming a still larger balance, became also a plaintiff here, by an assignment of cross errors.
By the Court.—In revising the decree in this case—as it depends chiefly on matters of fact—we shall consider, and condense, only the more prominent and important points and circumstances.
I. The partnership was not actually continued beyond the end of the year 1826, or, at the utmost, the winter of 1827. This is indisputably proved by the admissions and acts of both Ormsby and Hite, and by the accounts exhibited:—first, Irvine testifies that, in the spring of the year 1827, he brought to Louisville a large, quantity of lumber, and applied to Ormsby to buy it; who refused, and assigned as his reason, the fact, that he and Hite, having found the business not very profitable, had closed their connection with Ferguson and Graham, so far as future purchases might be concerned, and thereupon recommended to him Ferguson and Graham, as faithful and trust worthy men, and advised him to sell to them; which he finally did, on the condition that they should be responsible only out of the proceeds of sale; and he also testifies that, afterwards, in 1828, Ormsby recognized the fact of dissolution in the winter of 1827, and again commended to him, in the most flattering terms, his former associates Ferguson and Graham, as then conducting the lumber business on their own credit and for their own profit alone. James W. Graham testifies, in effect, to the same facts. And John D. Young testifies that Hite stated to him, that he and Ormsby had not continued to be concerned in the lumber partnership more than four years—that is in 1823, 4, 5, and 6.
Second. Although the account, as exhibited on the ledger of Ormsby and Hite, and on that of Hite, Fel *556 lows and Hite, shows a continuation of payments up to the year 1830, by Graham and Ferguson, on account of sales of lumber purchased in the year 1826, yet iohen correctly understood, they contain no charge for money advanced for the purchase of lumber in that year. The apparent charge of $1911 01, on the books of Hite, Fellows and Hite, was made through mistake, and is evidently erroneous:—(1st.) because the settlements made between the parties in 1830, and 1832, excluded it; and Hite himself, says, in his bill, that this, charge was made for that sum paid since the 2nd of January, 1828, on account of “R. Ormsby & Co., and should have been charged to R. Ormsby & Co.,” instead of being, as it had been charged to “plank and lumber account.” And moreover, although the parties made several settlements since 1827, no allusion was ever made to any continuation of the partnership, nor any claim ever intimated for profits made out of lumber bought since the year 1826.
The profits of the business during the continuance of the partnership, assumed by the Chancellor to be $24,000, did not, in the opinion of this court, upon the facts recited, exceed §5000.
II. Had there been no final settlement of the entire partnership accounts, between Ormsby and Hite, and Graham and Ferguson, the amount assumed, as presumed profits, by the Chancellor, would have been obviously exorbitant, There never was as much as $69,000, as supposed by the Chancellor, expended by Ormsby and Hite, as capital in the purchase of lumber. For the first two years the expenditure was inconsiderable, and was speedily exceded by receipts from sales. The principal expenditure was that made for lumber bought in 1826; the aggregate amount of which was not fully paid before August, 1827, as shown by the account on the ledger of Ormsby and Hite, and by Ormsby’s memorandum made out for Ferguson and Graham, and exhibited in this record. And the same ledger account shows, not only that a large portion of that year’s purchase was paid for by proceeds of sales, but that the actual capital advanced by Ormsby and Hite, could not have exceeded, and probably did not equal, $10,000; and moreover, that some of the items in the aggregate charge of $67,452, were for moneys not applied to the purchase of lumber, nor properly chargeable in the partnership account, and the vouchers show that some other charges made on the ledger, were *557 for moneys paid by Ferguson and Graham, and not in fact by Ormsby and Hite. It is incredible that a profit of $24,000, as assumed in the Chancellor’s decree, could have been made upon any hypothesis which the facts authorize as to capital employed and the probable avails of the actual investment. We doubt, whether, altogether, more than double the amount of the assumed profit of $24,000 was ever expended in the purchase of lumber, during the four years of the partnership; and we do not believe that an actual capital exceeding $10,000 was ever advanced by Ormsby and Hite; and the most of the advances by them, having been made in 1825 and 26, a profit of $24,000 on such a capital thus advanced and emplyed for only two years, and chiefly during the last of those years, would be enormous, and far exceed any estimate authorized by the proof, in the cause; and we cannot say that a profit of about $5,000, as indicated by the settlements of the parties, would be unreasonably small; and the more especially, as the chief reason assigned by Ormsby, for declining any further advance after 1826, was that the business was not sufficiently profitable.
Opinion and decision, that the partnership accounts were finally and irrevocably settled by the parties themselves, in July, 1830.
III. But, however all this may be, the facts in the record prove conclusively, in our opinion, that the partnership concern was finally and irrevocably settled by the parties themselves.
On the 8th day of July, 1830, the parties made a settlement, in which Ferguson and Graham were charged with the balance appearing on the ledger of Ormsby and Hite, of $8670 14, (which was more by $352 77½ than it ought to have been,) and were allowed credit for $10,416 76, the amount of payments to Hite, Fellows and Hite, made after the 2nd of January, 1828, on account of sales of lumber bought in 1826, and also with $3115 31, for uncollected notes and accounts for lumber of that year’s purchase, sold since the 5th of August, 1827. And the parties mutually signed a paper reciting that it was a memorandum of a “settlement of their plank and lumber account.”
On the 28th of September, 1830, they made a contract for the building of several houses by Ferguson and Graham, for Ormsby and Hite, for which the latter there *558 by agreed to pay the former $—, “the balance of the plank and lumber account, as had been settled by them—in June (July,) 1830;” and the remainder of the stipulated price, if any, in the rent of the houses, until the whole cost should be thus extinguished. And on the 26th of June, 1832, they settled the building account, ascertained the entire cost to be $8318 19, and entered a credit thereon for $2076 87, as Ormsby and Hite’s two thirds of the notes and accounts for $3115 31, included in the settlement of July, 1830, and referred to in the contract of September, 1830, as the subject of credit for the building, and which had been delivered to Ferguson to collect and account for; and also, entered a credit for $343 75, the amount of a note which had been given to them by Ferguson and Graham, and also for $800 for rent of square No. 2, for the year 1832; thereby acknowledging a balance then due to Ferguson and Graham of $5097 52.
It seems to us that the irresistable conclusion from all these facts combined, especially with the fact of dissolution as early as the spring of the year 1827, is, that Ormsby and Hite had no further claim against Ferguson and Graham, on account of the lumber which had been bought for their joint profit, and that they acknowledged, finally, in 1832, that they then, after settling all accounts between them, owed Ferguson and Graham $5097 52.
The memorandum of July, 1830, purports to have been a full and final settlement of the lumber partnership accounts, including advances, receipts, and profits—leaving the profits unascertained only as to the then uncollected balance of $3,115 31.
And this construction of it is not repelled or impaired by the fact that, in the same memorandum, there is a recital that Ormsby and Hite are to be entitled to two thirds of the profits when ascertained. The whole memorandum, when considered altogether, imports that there had been a final settlement of the lumber “business,” and as the precise amount of profits could not be ascertained until the uncollected balance of $3,115 31 should be finally adjusted, the parties as we presume, not being on that account alone, able then to divide the profits, recited *559 the proportion to which they would be respectively entitled when, after it should be known how much of the uncollected $3,115 31 would be available, they would ascertain the precise amount to be divided.
Moreover, having dissolved their partnership three years before, except for the purpose of disposing of the lumber of 1826, and all of that lumber having been sold probably in 1829, we could imagine no other motive for the settlement of July, 1830, than a wish to settle finally the entire partnership account, and ascertain and fix finally, the amount which Ormsby & Hite were still entitled to receive from Ferguson & Graham.
The contract of September, 1830, corroborates this deduction as to the settlement of July preceding; for it refers to the balance, ascertained by that settlement, in favor of Ormsby & Hite; stipulates for a credit in their favor, for that amount alone, and provides for payment by them of the balance of the building account, in future rents of houses, which surely would not have been agreed on, had there been any doubt whether Ferguson and Graham owed any thing still unsettled on account of the lumber partnership.
But could there still be any doubt on this subject, it must vanish when the settlement of June, 1832, is considered. Then certainly, if ever, it was the interest of Ormsby & Hite to claim all credits to which they were entitled. And it is evident that they claimed all they then thought they had any right to claim. If they supposed that any thing remained unaccounted for, why was no such suggestion then made? Why did they obtain a credit for one year’s rent, for Ferguson & Graham’s note, and for two thirds of the $3,115 31, and agree to pay an ascertained balance of $5,097 52, unless they were satisfied that the credit thus entered for the two thirds of the $3115 31, was all they were entitled to on account of profits of the lumber business? And why did they seem afterwards to be satisfied, and neither seek any further settlement, nor complain of what had been done, until Hite, after he had been sued for the ascertained balance of $5,097 52, filed his bill in this case, in the year 1837, about five years after the settlement of 1832?
*560 Upon the facts as exhibited, there is, we think, no semblance of plausibility in the pretension that there had never been a full and final settlement of the whole lumber concern.
And we presume that had Ormsby continued to live, or had not Hite been deluded by Exhibit E. which, on examining the documents in his possession, about the time when he was sued at law, he noticed perhaps for the first time that he had seen or carefully considered it—we can scarcely doubt that the present unfortunate controversy would never have arisen.
But this document, when rightly considered, is entitled to no influence on the question, either of a final settlement, or of the fairness of that settlement. It only shows that Rice, who acted as a sort of clerk for Ferguson & Graham, and by whom it was made out for Ormsby, prior to the settlement of July, 1830, stated that, in his opinion lumber, of the last purchase of 1826, had been sold to the amount of $9,201 561, since the 5th of August, 1827, when the last payment had been made to Ormsby & Hite, before the transferrence of the account to the books of Hite, Ormsby & Hite. But, as Ferguson and Graham had already been charged on the ledger of Ormsby and Hite, with the whole amount advanced for the lumber of that year, it would surely be unjust to charge them again with the account exhibited in document E.
Besides, they afterwards paid to Hite, Fellows and Hite, $10,416 76, which doubtless included the receipts for sales as exhibited in document E.
But exhibit E, was in Ormsby’s possession, and exhibited on the settlement of July 1830; and figures, made by himself on that document, during that settlement, show that he then understood it as we have just explained it to have been, and, by adding the excess of the J payment of $10,416 76, made to Hite, Fellows and Hite, over the balance against Ferguson and Graham, on the books of Ormsby and Hite, to wit, $1,746 62—to the $3,115 31, he made the entire profit, to be divided, amount to the aggregate of these two sums, to wit $4,861.
There can be no doubt, therefore, that, when rightly understood, document E should make no figure in this *561 cause, and was understood and disposed of properly in the settlement of July, 1830.
There is neither allegation nor proof, impeaching the settlement for fraud to mistake.
IV. Nor can the settlement, as made, be set aside for fraud or mistake. 1. There is no allegation of either fraud or mistake, made directly or indirectly in the bill: Hite goes altogether on the assumed ground that there never was a final settlement. (2.) Had there been any allegation of fraud or mistake, it would not have been sustained by the proof.
Gray’s note, given for lumber, and collected by Ferguson since 1832, is among those with which he was charged in the settlement: it was included in the aggregate of $3,115 31. And the accounts of Harrison and of Snead may have been, and probably were, chiefly, if not wholly, for lumber, not of Ormsby and Hite and Graham and Ferguson, but of Graham and Ferguson, bought in the Spring of 1827, on their own account. Besides, if, on either of these accounts, Ormsby and Hite were entitled to any thing, it is not improbable that they were satisfied therefor by the note of Ferguson and Graham for $343; or by the charge made against Ferguson of $717, in the settlement of 1830.
Nor should fraud in the settlement be inferred from the fact that Ferguson has exhibited no Books, and denies that he kept any other account of sales than loose memorandum books. As he and Graham were charged with all advances made for lumber, Ormsby and Hite had the means of knowing the amount and value of all the lumber they had received, and could have had but little difficulty in ascertaining whether they accounted for the whole. It was not, therefore, indispensable that Ferguson and Graham should have kept any other account of sales than such as they have declared in their answers that they did keep, and which were sufficient for showing what had been sold, and to whom, and how much had been collected. Moreover, it is very probable from the proof in the cause, that they kept no other account, and have suppressed nothing in their answers.
But however this might happen to be, the settlements were all made upon the accounts as rendered; all parties seemed to be satisfied, and there is, even now, no proof *562 that those settlements were false or fraudulent to the prejudice of Ormsby and Hite.
No ground for charging Ferguson &c. with rent for the lumber yard, between the dissolution, and 1st Jan. 1832.
Defts. pleading & relying upon a settlement, are estopped by the plea from opening the settlement.
Hite, it is true, complained, before the settlement of 1830, that Ferguson and Graham had not kept, or if they had kept, had not shown to him, any regular book account. But, nevertheless, the settlements were all afterwards made, and he was never afterwards heard to complain until about the time of filing his bill in this case.
After such settlements, made under such circumstances, and after so much satisfaction manifested by Ormsby, as long as he lived, and such long apparent acquiecence by Hite, there seems to be no ground whatever for now revising the settlements upon the plea of either fraud or mistake, had a sufficient foundation for such revision been laid by the allegations of the bill, and even had there been more plausible grounds than there seems to be, for charging mistake or imputing fraud.
We are, therefore, clearly of the opinion, that there is no foundation for any decree against Ferguson and Graham, on the lumber partnership account.
Nor is there any ground for charging them with any thing on account of rent between the dissolution of the partnership and the 1st of January 1832; because, whatever they may have owed on that account, must have been settled in July, 1830, or before.
We are also of the opinion that, the plea of the settlements estops Ferguson and Graham from opening those settlements—even though it may be admitted that, if those settlements were on their parts fair, they were prejudiced by them, as they probably were in being charged with too much, and in not receiving a credit for their one third of the $1,746 62, paid by them, over and above the amount charged against them for lumber.
Wherefore, the decree of the Chancellor is reversed, and the cause remanded for a decree to be entered conformably, with the principles of the foregoing opinion.
May, 18.